## Hoerr's Estate.

*Equity—Mortgage—Deed—Imprudence.*

Where a mortgagee takes a conveyance of the mortgaged premises, and in a collateral agreement in writing covenants that if he shall sell the premises for more than the amount of the mortgage he will pay over the surplus to the mortgagor, and thereafter the mortgagee in possession makes improvements with the knowledge of the mortgagor, and after the mortgagee's death the property is sold for an amount equal in the aggregate to the mortgage and the value of the improvements, the mortgagor is not entitled to any share of the proceeds of the sale.

Submitted April 28, 1902.   Appeal, No. 59, April T., 1902, by John Niebel, from decree of O. C. Allegheny Co., Sept. T., 1900, No. 182, dismissing exceptions to adjudication in Estate of Rosanna Hoerr, Deceased.  Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Exceptions to adjudication.   HAWKINS, P. J., filed the following opinion:

The question involved in this matter is whether or not, after the lapse of twenty-eight years, profit realized on sale of real estate under a written stipulation may be recovered.

The facts are these :

Philip Hoerr deeded to his brother-in-law, John Niebel, certain property in Pittsburg, Sidney street, in 1873, in consideration of $5,200, which Niebel reconveyed to Hoerr in 1876, the consideration named in the deed being $3,355.89; but in a paper of even date Hoerr stipulated as follows :

"Whereas, John Niebel reconveyed to me the house and lot situate on the south side of Sidney street, and fully described in deed from Philip Hoerr et ux. to John Niebel, recorded in deed book, vol. 325, page 41, for the payment of $3,355.89, due to me on mortgage which I hold against him on said property.

"Now, I hereby promise that in case I should, at any time sell said property for more than the said sum of $3,355.89, I will pay the surplus to the said John Niebel, or his assigns.

"And I further promise that should said John Niebel find a

suitable purchaser, I will, at any time, convey the property to said purchaser, on payment to me of the said sum of $3,355.89; provided, however, that he shall not ask or demand possession of the same until the first day of April next following the day of such conveyance.

"Witness my hand and seal this 27th day of March, A. D. 1876.

"PHILIP HOERR.    [Seal.]

"Attest: CHAS. F. HOERR."

Hoerr died, August, 1899, leaving a will in which this property was devised to his wife, who afterward died intestate, and the proceeds of a sale in partition amongst her next of kin, amounting to $4,500, having been brought here for distribution, Niebel presents claim for the surplusage under Hoerr's stipulation. The evidence shows that from 1876 until the sale in partition, Hoerr and his family occupied the premises, and that presumptively with the knowledge of, but without, so far as appears, consulting Niebel, he made improvements amounting in value to $1,100.

Objection is made to the allowance of this claim upon the ground, (1) that the undertaking of Philip Hoerr is without consideration, and (2) that if Niebel ever had any just claim he is barred, both both by laches and estoppel.

### OPINION.

1. It seems clear that the first objection to Niebel's claim is not well taken. The undertaking by Hoerr being under seal, imparted a consideration; its date and its contents implied that it constituted part of the contract of reconveyance; and the deeds of 1873 and 1876 show a falling off of consideration, of which this paper furnishes the only explanation. The reconveyance probably grew out of the inability of Niebel to make the deferred payment of purchase money ($3,200), and Hoerr's undertaking was a method adopted of reimbursing Niebel the cash payment which he had made.

2. Nor is the objection of laches well taken; Hoerr's undertaking being part of the res gestæ, and therefore in the channel of title was as effectual to preserve the lien as if the form of ground rent had been adopted instead. The period of time in which the sale might be made and the excess claimed, was by

the very terms of the undertaking unlimited in duration : " I hereby promise (Mr. Hoerr stipulated) that in case I should, at any time, sell said property for more than the said sum of $3,355.89, I will pay the surplus over to the said John Niebel, or his assigns." The claim is not an equity staled by lapse of time, but an equity based upon an express promise, whose terms have admittedly never been fulfilled. No explanation has been given why the property was not sold sooner. It may be that the value which was placed upon it by one or the other of these parties was too high to tempt buyers, and certainly the public sale showed a marked depreciation. It is attributed to Niebel as evidence of laches that he procured no purchaser; if this be true, it is equally so of Hoerr, whose undertaking imposed upon him the exercise of the utmost good faith, and it was more his than Niebel's duty to account for the delay. Hoerr assumed the burthen of the promise, while Niebel was named as beneficiary.

3. The conduct of Niebel was not such as to mislead Hoerr to his injury, and could, therefore, work no estoppel. Hoerr's undertaking was, as has been seen, based on a valuable consideration, and its faithful fulfillment must be presumed to have been intended. Having made improvements on the property without consulting Niebel, he did it at his own risk. The mere fact that Niebel saw them being made would not estop him; his acquiescence did not mislead, and there is no evidence that Hoerr even knew he had seen them.

But the fact is that the improvements were made, and admittedly added their value to the price realized at the sale; and the pivotal question is whether or not credit should be given for them; if so, there is no surplusage on which the claim can fasten. It is maximatic that he who comes into court asking, must first do equity. Thus where the true owner, having recovered possession, files a bill for an account of rents and profits, it is the constant habit of courts of equity to allow the defendant credit for the full amount of improvements beneficial to the estate. So if the true owner who has only equitable title to an estate seeks the aid of a court of equity, aid will be given only upon terms of making compensation for such improvements : Thomas v. Evans, 26 Cent. Law Jour. 77 and n. So allowance will be made a tenant in common in partition for

betterments to part of the estate: Kelsey's App., 113 Pa. 119. The principles of those cases rule this. Coming into court asking aid, Niebel must concede that measure of equity and justice which he asks. The improvements made were in no sense prejudicial to him; they were made with means in which he had no part, and contributed proportionably to increase the price for which the property sold. It follows that Hoerr's estate is entitled to credit for them.

*Error assigned* was decree dismissing exceptions.

*Thomas M. & Rody P. Marshall,* for appellant.—The principle laid down in Kelsey's App., 113 Pa. 119, should not apply to this case, since in that case they were tenants in common, and the improvements allowed them were absolutely necessary to the enjoyment of the estate, while in this case, there was no necessity for any improvements since there was a house on the front of the lot, and the lot only 120 feet deep. And in Thomas v. Evans, 26 Cent. Law Jour. 77, and numerous cases cited in the note thereto, in all of which cases the improvements allowed for were made by bona fide purchasers for valuable consideration where the builder is in no default, that is, where the parties improving were innocent third parties, and for that reason none of these cases should have any bearing on this one.

To equitably decide this case it is necessary to remember that Hoerr was an intelligent man, and at the time of making said improvements, knew of the existence of his agreement with Niebel, and he should be held to have assumed the risk when he made the improvements, just as though he was tenant at will, hoping his landlord would allow him to remain.

*R. B. Petty,* for appellee.—A court of equity will not enforce a contract where, from a change of circumstances or otherwise, it would be unconscientious to enforce it: Story's Equity, section 750*a.*

The equity of a vendee to a decree for specific performance may be lost by delay in enforcing it. Where, in addition to laches for many years there is a change in the condition of the parties, the value of the property or the circumstances attending the contract of sale, the vendee has no equity which a chan-

cellor will enforce: Du Bois v. Baum, 46 Pa. 537; Callen v. Ferguson, 29 Pa. 247; Backus's Appeal, 58 Pa. 195; Hammond v. Hopkins, 143 U. S. 224; Mackall v. Casilear, 137 U. S. 556.

PER CURIAM, May 22, 1902:

The orphans' court found upon sufficient evidence that the appellant presumably knew of the improvements being made by Philip Hoerr. While his mere knowledge without more would not estop him, yet, the fact that he knew of, and did not object to, the improvements is not without significance in determining the equities. Further, the court found as a fact, that the improvements added their value to the price realized at the sale. The allowance of the expenditures, therefore, was in no way prejudicial to the appellant. He is in the same position as if they had not been made; at least he is in no worse position. Under the special facts and circumstances of the case the decree preserved the equitable rights of both parties. It is affirmed upon the opinion of the learned president of the orphans' court.